UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT WEST CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NAVISTAR, INC., et al.,<br><br>Defendants. | No. 2:14-cv-01940-KJM-DAD<br><br><br><br>ORDER |

       This case tests the relationship between a truck and its right headlight. Plaintiff Great West Casualty Company argues a truck and a headlight are two products, one built into the other. Defendant Navistar Inc., the truck's manufacturer, argues the two are one product only—a truck without a headlight is not a truck—at least for purposes of this lawsuit. The matter is before the court on Navistar's motion for partial summary judgment, which Great West opposes. After considering the parties' briefing, the court determined the matter was appropriate for resolution without a hearing. As explained below, the motion is DENIED.

I.    UNDISPUTED FACTS AND PROCEDURAL HISTORY

       Movin Hay, Inc. moves hay with trucks. *See* Pls.' Resp. Def.'s Statement Undisputed Material Facts (UMF) no. 1, ECF No. 22-1. In July 2011, Movin Hay leased a Navistar truck from Idealease of Modesto/Turlock, and the truck caught fire. *Id.* nos. 1, 9. The

1

fire allegedly started "in the area of the right-front fender," thanks to a defective headlamp assembly. Joint Status Report (JSR) 2, ECF No. 10. Movin Hay had insurance from Great West, who paid Idealease $110,000. UMF no. 2.

Great West sued Navistar and Osram Sylvania, Inc. (the bulb's manufacturer) for the $110,000 plus interest and alleged claims for strict products liability, negligence, and breach of express and implied warranties.[1] Notice of Removal, Ex. A (Compl.), at 4, ECF No. 1; JSR 1–2; UMF nos. 3, 12. The complaint specifies the "product" in question is a "2012 Navistar International truck . . . , including all component parts . . . , all of which were designed, manufactured, distributed, supplied, and sold by the defendants." Compl. at 4. Great West claims property damages only, not personal injuries, and seeks damages for only the truck *sans* headlight. UMF no. 5–7.

The case was removed to this court in August 2014. ECF No. 1. On May 19, 2015, Navistar moved for partial summary judgment on the products liability, negligence, and implied warranties claims. ECF No. 20. It argues Great West cannot recover any damages on its strict liability and negligence claims because the truck and headlight are one product, and California law prohibits recovery of economic losses in products liability cases when the only damage was to the product itself. *Id.* at 9–11. As to Great West's claims for breach of implied warranty, Navistar argues (1) Great West, Movin Hay, and Navistar lack privity, as required for such a claim, and (2) Navistar expressly disclaimed any liability for breaches of implied warranties. *Id.* at 11–14.

Great West has agreed to voluntarily dismiss its claim for breach of implied warranty.[2] Notice of Withdrawal, ECF No. 21. These claims are therefore dismissed. *See* Fed. R. Civ. P. 41(a)(2). Otherwise it opposes the motion and argues the headlight and truck are not

---

[1] Osram was dismissed by stipulation in January 2015. Stip., ECF No. 14; Minute Order, ECF No. 17.

[2] The parties complied with the court's standing order to meet and confer, but Great West was unable to agree to withdraw this claim until after reviewing Navistar's motion. *See* Mot. Summ. J. 2, ECF No. 20; Opp'n 1, ECF No. 22.

2

1    one product, but two, and therefore the defective product in question, the headlight, caused

2    damage to another product, the truck, not just the headlight itself.  Opp'n at 9–15, ECF No. 22.

3    Navistar replied, ECF No. 23, and objected to evidence submitted with Great West's opposition,

4    ECF No. 24.

5    II.     LEGAL STANDARD

6             A court must grant a motion for summary judgment "if . . . there is no genuine

7    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

8    Civ. P. 56(a).  A motion for summary judgment calls for a "threshold inquiry" into whether a trial

9    is necessary at all, that is, whether "any genuine factual issues . . . properly can be resolved only

10   by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v.*

11   *Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The court does not weigh evidence or pass on the

12   credibility of witnesses; rather, it determines which facts the parties do not dispute, then draws all

13   inferences and views all evidence in the light most favorable to the nonmoving party.  *See id.* at

14   255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).  "Where

15   the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

16   there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of*

17   *Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

18            The moving party bears the initial burden of "informing the district court of the

19   basis for its motion, and identifying those portions of [the record] which it believes demonstrate

20   the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

21   (1986).  If the party opposing summary judgment bears the burden of proof at trial, the moving

22   party need only illustrate the "absence of evidence to support the non-moving party's case." *In re*

23   *Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  The burden then shifts to the non-

24   moving party to "go beyond the pleadings" and "designate specific facts" in the record to show a

25   trial is necessary to resolve genuine disputes of material fact.  *Celotex*, 477 U.S. at 324 (quotation

26   marks omitted).  The non-moving party "must do more than simply show that there is some

27   metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "Only disputes over

28

1  facts that might affect the outcome of the suit under the governing law will properly preclude the
2  entry of summary judgment." *Anderson*, 477 U.S. at 248.

3  III.     OBJECTIONS TO EVIDENCE

4  Navistar objects to four exhibits submitted with Great West's opposition:
5  (1) printed pages from Navistar's website; (2) photographs of the burned truck; (3) photographs
6  of the burned headlight; and (4) printouts from two websites showing truck headlights available
7  on the aftermarket.  Objections to Evid. (Obj.) 2, ECF No. 24.  The photographs and printouts
8  from Navistar's website, *i.e.*, items (1)–(3), would not affect the court's ruling here, and the court
9  does not consider them; the court therefore does not reach these objections.

10  As to the website printouts, Rule 56 allows objections that "the material cited . . .
11  cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).
12  As this language suggests, at summary judgment, the evidence's propriety depends not on its
13  form, but on its content.  *Celotex*, 477 U.S. at 324; *Block v. City of Los Angeles*, 253 F.3d 410,
14  418–19 (9th Cir. 2001).  The party seeking admission of evidence "bears the burden of proof of
15  admissibility."  *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).  But courts are
16  sometimes "much more lenient" with the affidavits and documents of the party opposing
17  summary judgment.  *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

18  Here, first, Navistar objects to the website pages' relevance.  Obj. at 2.  The
19  moving papers themselves—not separate tables of objections—are the correct mode of objection
20  on relevance.  *See, e.g.*, *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1118–19
21  (E.D. Cal. 2006).  Rule 56 expressly seeks out genuine disputes of material facts, not immaterial
22  facts.  Navistar's relevance objection is overruled.

23  Second, Navistar objects to the website printouts as hearsay.  Obj. at 2.  A party
24  opposing a motion for summary judgment seeks a trial, not a verdict, and it stands to reason that
25  if evidence may be converted to admissible form for trial, it should not be excluded at summary
26  judgment.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (declining to exclude
27  hearsay statements because in alternate form the testimony could be admitted at trial).  Great
28  West offers the printouts in question as evidence that truck headlights are available in the

4

aftermarket. *See* Opp'n at 11. This information is almost certainly admissible at trial in some form, for example by direct testimony from a person with knowledge. Navistar's hearsay objection is overruled.

Third, Navistar objects that the printed pages lack a proper foundation and were not authenticated. Rule 56 requires declarations submitted in opposition to a motion for summary judgment to "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). For evidence to be admissible at trial, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a), for example by testimony from a person with knowledge, Fed. R. Evid. 901(b)(1). The printouts here are attached to the declaration of Marc Ward, an attorney representing Great West. *See* Ward Decl. ¶¶ 1, 5g, ECF No. 22-2. His declaration describes how he "personally viewed and printed" the pages in question on May 26, 2015. *Id.* ¶ 5g. These statements suffice to establish the websites appeared as reported on that date. Navistar's objection is overruled.

IV.   SUMMARY JUDGMENT

    A.   Applicable Law

Manufacturers, distributors, and retailers are strictly liable in tort for injuries caused by their defective products. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 478–79 (2001); *Cronin v. J.B.E. Olson Corp.*, 8 Cal. 3d 121, 130 (1972); *Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 62 (1963). Plaintiffs may also recover under a theory of negligence. *Merrill*, 26 Cal. 4th at 478–79.

Products liability is not absolute: "a manufacturer's liability is limited to damages for physical injuries." *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965). "Physical injuries" include both "physical injury to the plaintiff's property, as well as personal injury." *Id.* at 19. In other words, the consumer bears "the risk that the product will not match his economic expectations," so unless the consumer and manufacturer agree otherwise, a consumer cannot recover for damages to the product itself. *Id.* at 18; *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 483 (2002). Contract law embraces actions for damages to the defective product. *Jimenez*, 29 Cal.

4th at 483.  This rule applies equally to claims of negligence and strict liability, *see, e.g.*, *Carrau v. Marvin Lumber & Cedar Co.*, 93 Cal. App. 4th 281, 293–94 (2001), and is commonly known as the "economic loss rule," *Jimenez*, 29 Cal. 4th at 481–84.

The economic loss rule does not bar recovery for damages to property other than the defective product.  *Id.* at 483–84.  For example, a defective window or faulty foundation may damage a house, and a plaintiff could assert a tort claim for damages to the house.  *Id.*; *Stearman v. Centex Homes*, 78 Cal. App. 4th 611, 622–23 (2000).  As might be expected, cases often turn on the definition of "product": the smaller component or the assembled whole?  *See Jimenez*, 29 Cal. 4th at 483 ("To apply the economic loss rule, we must first determine what the product at issue is.").

In *KB Home v. Superior Court*, the California Court of Appeal inferred the following test from *Seely* and *Jimenez*: a defective component is a discrete product if "it is not reasonable to expect its failure invariably to damage other portions of the finished product."[3]  112 Cal. App. 4th 1076, 1087 (2003).  To this end the court approved four questions:

> (1) Does the defective component . . . perform an integral function in the operation of the larger product . . .?
>
> (2) Does the component have any independent use to the consumer, that is some use other than as incorporated into the larger product?
>
> (3) How related is the property damage to the inherent nature of the defect in the component?
>
> (4) Was the component itself or the larger product placed into the stream of commerce (or, viewed from the buyer's perspective, was the larger integrated product or the component itself the item purchased by the plaintiff)?

*Id.* at 1086–87.  A federal district court has read *KB Home* to adopt four more factors:

---

[3] Justice Kennard wrote separately in *Jimenez* to propose a similar test: "in determining whether a component manufacturer is strictly liable in tort for harm that its defective product causes to a larger object of which it is a component, the pertinent inquiry is whether the component has been so integrated into the larger unit as to have lost its separate identity."  29 Cal. 4th at 487 (Kennard, J., concurring).  Because "[w]indows can be readily removed from houses and replaced with other windows" and "[a] window that has been removed from one house can then be installed in another house," she concluded "a window manufacturer is strictly liable in tort for damages that defects in its windows cause to other parts of the homes."  *Id.* at 487–88.

6

   (5) whether the component was purchased from another manufacturer;

   (6) whether the larger product was sold in other markets without the component;

   (7) whether the component can be readily removed from the larger product; and

   (8) whether the component has been used in other applications.

*McDowell Valley Vineyards, Inc. v. Sabate USA Inc.*, No. 04-708, 2004 WL 1771574, at *4 (N.D. Cal. Aug. 6, 2004).

   California state and federal courts have concluded, for purposes of the economic loss rule, a house and its windows, foundation, and furnace may be distinct, *Jimenez*, 29 Cal. 4th at 483–84; *Stearman*, 78 Cal. App. 4th at 622–23;[4] *KB Home*, 112 Cal. App. 4th at 1087; a truck and its steering assembly are distinct, *Sater v. Chrysler Grp. LLC*, No. 14-00700, 2015 WL 736273, at *13 (C.D. Cal. Feb. 20, 2015); radio transceivers and connecting cables are distinct, *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. 13-1803, 2013 WL 4530470, at *7 (N.D. Cal. Aug. 26, 2013); a yacht and its motor are distinct, *Pershing Pac. W., LLC v. Ferretti Grp., USA, Inc.*, No. 10-1345, 2013 WL 275676, at *11 (S.D. Cal. Jan. 24, 2013); and eggs from two sources are distinct, as are eggs and their packaging, *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1029 (E.D. Cal. 2013). But a tomato seed and a tomato plant are not distinct, *Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 988 (S.D. Cal. 2014); a turbine and its blade rotors are not distinct, *Waste Mgmt., Inc. v. Ishikawajima-Harima Heavy Indus., Co.*, No. 04-2028, 2006 WL 2507150, *4 (E.D. Cal. Aug. 29, 2006); a motorhome and an attached generator and air conditioner are not distinct, *Harlan v. Roadtrek Motorhomes, Inc.*, No. 07-0686, 2009 WL 928309, at *19 (S.D. Cal. Apr. 2, 2009); and

---

[4] *Stearman* was decided before *Jimenez*. California courts have recognized that *Jimenez* altered the landscape of the economic loss rule, such that cases predating *Jimenez* may no longer be binding. *See, e.g.*, *KB Home*, 112 Cal. App. 4th at 1084–85. Nevertheless, the *Jimenez* court cited *Stearman* favorably, *see* 29 Cal. 4th at 483–84, so this court assumes it remains good law.

1  a notebook computer and its trackpad are not distinct, *In re Sony Vaio Computer Notebook Trackpad Litig.*, No. 09-2109, 2010 WL 4262191, at *7 (S.D. Cal. Oct. 28, 2010).[5]

B. <u>Discussion</u>

As a preliminary matter, Navistar is not entitled to summary judgment on the sole basis of Great West's definition of the "product" as "the 2012 International tractor . . . and each of its component parts" in an interrogatory, Pls.' Interrog., Gower Decl. Ex. D, at 2, ECF No. 20-3, or as the "2012 Navistar International truck . . . including all component parts of the same" in its form complaint, Compl. at 4. Great West's allegations and behavior during the course of this litigation consistently peg the headlight as its focus. *See, e.g.*, JSR at 1–2; Ward Decl. ¶ 3.

In *KB Home*, the trial court had held that as a matter of law, a stainless steel rod used to reduce emissions of noxious gas from a home furnace was one integrated product: a furnace. 112 Cal. App. 4th at 1079–82 & n.4. The appellate court reversed and found the question was one for the trier of fact, but noted in the margin that summary judgment "may be proper if the uncontradicted facts established through discovery are susceptible of only one legitimate inference." *Id.* at 1079–80 & n.2 (citation, internal quotation marks omitted); *see also Fieldstone Co. v. Briggs Plumbing Prods., Inc.*, 54 Cal. App. 4th 357, 364 (1997) ("The essential facts are undisputed; the issue of whether [the plaintiff] suffered 'property damage' or merely 'economic loss' . . . presents a question of law." (footnote omitted)), *superseded by statute on other grounds as stated by Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1213

---

[5] In *Aas v. Superior Court*, the California Supreme Court cited several additional cases to show "the concept of recoverable physical injury or property damage [had] expanded to include damage to one part of a product caused by another, defective part." 24 Cal. 4th 627, 641 (2000) (citing *Stearman*, 78 Cal. App. 4th at 615, 616–23 (foundations and homes); *Int'l Knights of Wine, Inc v. Ball Corp.*, 110 Cal. App. 3d 1001, 1005 (1980) (leading opinion, Roth, P.J) (bottlecaps and wine); *Gherna v. Ford Motor Co.*, 246 Cal. App. 2d 639, 644, 649–651 (1966) (defective engine and car)). The authority of these decisions post-*Jimenez* is questionable, as many relied on the proposition that "the doctrine [of strict products liability] has been extended to govern physical injury to a plaintiff's property as well, including within the latter term the article purchased itself." *Int'l Knights of Wine*, 110 Cal. App. 3d at 1005. *See also KB Home*, 112 Cal. App. 4th at 1084–85 ("Prior to the Supreme Court's decision last year in *Jimenez*, the predominant view in California was that tort recovery was available even when the sole physical injury caused by a defect is to the product itself.").

(2008). California federal district courts have similarly concluded that "if the facts required to address these inquiries are uncontested, the court can draw the line between the defective product and other property." *Waste Mgmt.*, 2006 WL 2507150, at *4; *accord Agricola*, 44 F. Supp. 3d at 987 n.7 (S.D. Cal. 2014); *Harlan*, 2009 WL 928309, at *18. In each of these cases, the court granted summary judgment to the defendant, finding damages had been done only to the allegedly defective product.[6]

This case, however, does not lend itself so handily to resolution on summary judgment. Several of the *KB Home/McDowell* factors described in the case law favor Great West. Unlike other parts of a truck, perhaps the chassis or drivetrain, a headlight does not perform such an integral and inseparable function that damages to the truck as a whole are the reasonably expected result of its failure. Moreover, Navistar purchased the headlight from another manufacturer, and a headlight can be separately purchased in the aftermarket. *See* Ward Decl. Ex. 8. But other factors favor Navistar: from Movin Hay's perspective, the truck (not the truck plus its headlight) hauled hay; the headlight assembly has no independent use to a consumer, tailored to the truck body and model as it is; no evidence in the record suggests Navistar trucks are sold elsewhere with different headlights; and headlights arguably perform an integral and required function in a truck—who would buy a truck without them? In other words, these facts, even if undisputed, are not susceptible of only one legitimate inference.

A reasonable trier of fact could find the headlight in question passes the test as formulated in *KB Home*: "it is not reasonable to expect its failure invariably to damage other portions of the finished product," that is, the whole truck. 112 Cal. App. 4th at 1087. That test is, in essence, one of reasonableness, the traditional province of the jury. *See Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 868 (9th Cir. 2010) ("[S]ummary judgment is generally an inappropriate way

---

[6] In other cases, federal district courts have faced the question on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Sater*, 2015 WL 736273, at *13 (denying a motion to dismiss because the complaint asserted tort claims "for personal injury or property damage apart from the allegedly defective component parts"); *In re Sony*, 2010 WL 4262191, at *7 (granting the motion to dismiss because the complaint "lack[ed] any allegations suggesting that a trackpad would have any use to Plaintiffs outside of the notebooks").

1  to decide questions of reasonableness . . . . For example, it is generally inappropriate to grant
2  summary judgment . . . when applying state tort law . . . ." (citations and internal quotation marks
3  omitted)).  Moreover, the U.S. Supreme Court has taken care to note that district courts should act
4  "with caution in granting summary judgment," and have authority "to deny summary judgment in
5  a case where there is reason to believe the better course would be to proceed to a full trial."
6  *Anderson*, 477 U.S. at 255; *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th
7  Cir. 2001); *United States v. Honeywell Int'l, Inc.*, 542 F. Supp. 2d 1188, 1203 (E.D. Cal. 2008).
8  Taking into consideration the record as a whole, the court denies summary judgment on the
9  question of Navistar's tort liability under the economic loss rule.

## V.    CONCLUSION

Plaintiff's claim for breach of implied warranties is DISMISSED.  The motion for summary judgment is DENIED in all other respects.  This order resolves ECF No. 20.

IT IS SO ORDERED.

DATED: August 31, 2015.

_____
UNITED STATES DISTRICT JUDGE